**NATURAL RESOURCES DEFENSE COUNCIL, INC., Appellant,**

v.

**Lee M. THOMAS, Administrator, Environmental Protection Agency, et al. (Four Cases).**

Nos. 84–5566 to 84–5569.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 18, 1985.

Decided Sept. 12, 1986.

Ronald J. Wilson, with whom J. Taylor Banks, Washington, D.C., was on brief, for appellant.

Charles F. Lettow, with whom Douglas E. Kliever, Washington, D.C., for Union Carbide Corp., et al., Douglas E. McAllister, Washington, D.C., for American Min. Congress, Richard E. Schwartz, Washington, D.C., for American Iron and Steel Institute, Stark Ritchie and James K. Jackson, Washington, D.C., for American Petroleum Institute, et al., and Turner T. Smith, Jr., for Alabama Power Co., et al., were on joint brief, for appellees Union Carbide Corp., et al.

Susan Geggel Lepow, Atty., U.S.E.P.A., Washington, D.C., entered an appearance for appellee EPA.

Ellen J. Durkee and Robert L. Klarquist, Attys., U.S. Dept. of Justice, Washington, D.C., entered appearances for appellee U.S.

Robin S. Conrad, Washington, D.C., was on brief for amicus curiae Chamber of Commerce of the U.S.

Before ROBINSON, EDWARDS and SCALIA, Circuit Judges.

Opinion for the Court filed by Circuit Judge SCALIA.

SCALIA, Circuit Judge:

Section 505(d) of the Clean Water Act, added by the Federal Water Pollution Control Act Amendments of 1972 ("FWPCA Amendments of 1972"), Pub.L. No. 92–500, 86 Stat. 816, 889 (codified at 33 U.S.C. § 1365(d) (1982)), provides that a court may award attorney's fees in citizen suits brought under the Act "whenever the court determines such award is appropriate." In this case, we must decide whether it is "appropriate" to require industry intervenors to pay the attorney's fees of an environmental group that successfully defended against industry attack a settlement agreement it had concluded with the government in suits to compel implementation of the toxic pollutant control provisions of the Clean Water Act.

I

This case has a long and complicated history, having been before us previously on four separate occasions. *See Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); *Environmental Defense Fund v. Costle*, 636 F.2d 1229 (D.C.Cir.1980);

*NRDC v. Costle*, 561 F.2d 904 (D.C.Cir. 1977); *NRDC v. Train*, 519 F.2d 287 (D.C. Cir.1975). The settlement that underlies the current stage of the litigation terminated four related suits, which had been brought against the Environmental Protection Agency ("EPA") by the Natural Resources Defense Council, Inc. ("NRDC") and by several other environmental groups that are not parties to this appeal. The first suit, filed in 1973, challenged the criteria that EPA was using to compile the list of toxic pollutants required under § 307(a) of the Clean Water Act, added by the FWPCA Amendments of 1972, 86 Stat. 856 (current version as amended by the Clean Water Act of 1977, Pub.L. No. 95–217, 91 Stat. 1566, 1589, codified at 33 U.S.C. § 1317(a) (1982)). That suit was dismissed on the agency's motion, but this court reversed and remanded for additional proceedings because the District Court had acted without having the entire administrative record before it. *NRDC v. Train*, 519 F.2d 287. The other three cases, filed while the first case was pending, consisted of two actions seeking to compel EPA to promulgate within the statutory timetable the effluent discharge standards for substances already on the toxic pollutants list, and one action seeking a court order requiring EPA to promulgate the pretreatment standards required under § 307(b).

On March 31, 1976, the environmental plaintiffs and EPA, together with four industry parties that had intervened in one of the suits, submitted for court approval a proposed settlement agreement covering all four suits. At about the same point, a number of additional industry parties sought to intervene, in order to lend their assistance in the oversight and implementation of the agreement. The District Court's denial of intervention was reversed on appeal. *NRDC v. Costle*, 561 F.2d 904. After a hearing, the District Court approved the agreement over the intervenors' objections, *NRDC v. Train*, 8 Env't Rep. Cas. (BNA) 2120 (D.D.C.1976); no appeal was taken. On August 16, 1978, the District Court, acting under § 505(d) of the Clean Water Act, ordered EPA to pay the environmental plaintiffs $100,976.14 for their attorney's fees and costs in obtaining the settlement. *NRDC v. Costle*, 12 Env't Rep.Cas. (BNA) 1181 (D.D.C.1978).

That is not the fee award at issue in this case, which concerns developments after settlement was reached. In 1978, the environmental groups became convinced that EPA would not meet the deadlines for proposing and promulgating regulations contained in the agreement, and moved for an order to show cause why the agency should not be held in contempt of the District Court's order approving the settlement agreement. There followed a series of events in which an unusual alignment of the parties occurred, giving rise to the attorney's fee question at issue here. While EPA responded with a motion to amend the agreement to extend certain deadlines, the intervenors filed a motion to vacate the entire settlement agreement, arguing that it was inconsistent with the subsequently enacted 1977 amendments to the Clean Water Act, and that these were intended to supplant the agreement. EPA and the environmentalists thereafter reached agreement on and filed a joint motion to modify the agreement, simultaneously withdrawing their prior pleadings. The intervenors, however, declined to withdraw their motion to vacate the settlement agreement, and opposed the joint motion to modify on two new grounds: first, that the four cases underlying the agreement were mooted by the 1977 amendments; and second, that the proposed modification would disregard public notice and comment procedures required under federal law and would violate their due process rights.

The District Court rejected these arguments, denied the intervenors' motion to vacate the agreement, and granted the joint motion to modify. *NRDC v. Costle*, 12 Env't Rep.Cas. (BNA) 1833 (D.D.C. 1979). On appeal by several of the intervenors, this court found for the environmental groups and EPA on all issues raised by the parties, but *sua sponte* raised the question whether the settlement agreement impermissibly infringed on the discretion of

the Administrator of EPA and remanded for consideration of that issue. *Environmental Defense Fund v. Costle*, 636 F.2d 1229. On remand, the intervenors filed a motion to vacate based on this new issue; EPA, although opposing that motion, filed a cross-motion to modify the agreement in light of changed circumstances, seeking to delete those provisions compelling the performance of "discretionary" actions by EPA. Both motions were opposed by the environmentalists, and were denied by the District Court. *NRDC v. Gorsuch*, 16 Env't Rep.Cas. (BNA) 2084 (D.D.C.1982). On appeal by several of the intervenors, we affirmed. *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117.

Based on these post-settlement efforts, NRDC and two other environmental groups filed the motion for attorney's fees under § 505(d) which forms the basis of this appeal, seeking attorney's fees from both EPA and the intervenors.[1] The government did not oppose the request that EPA pay the groups' attorney's fees for work performed in opposition to the agency, and the District Court found it appropriate to award the plaintiffs $32,111.15 against EPA. *NRDC v. Administrator, EPA*, Civil Action Nos. 75–1698, etc. (D.D.C. Aug. 15, 1984) (Amended Order). The District Court refused, however, to make an award against either EPA or the intervenors for the rest of the work the environmentalists' attorneys had performed. The court could find "no rationale" to justify requiring the government to pay attorney's fees for work performed in opposing the intervenors, since EPA had joined the environmental groups in that opposition. *NRDC v. Administrator, EPA*, 595 F.Supp. 65, 70 n. 1 (D.D.C.1984). As for awarding fees for that work against the intervenors, the District Court concluded that neither the language of § 505(d) nor the structure of the Clean Water Act provided the "requisite expression of intent to reverse the American Rule against private parties such as the intervenors in this case," whose arguments are "non-frivolous" and whose "role in this litigation was similar to that of NRDC and helped further the goals of the Act." *Id.* at 70. NRDC alone has appealed, seeking review of solely the latter ruling under 28 U.S.C. § 1291 (1982).

## II

■ Unless Congress has expressly authorized a court to shift the cost of attorney's fees from one party to another, each party is generally expected to pay his own attorney. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975). Where a fee-shifting statute exists, "the circumstances under which attorneys' fees are to be awarded and the range of discretion of the courts in making those awards are matters for Congress to determine." *Id.* at 262, 95 S.Ct. at 1624. The narrow question before us, therefore, is the correct interpretation of § 505(d), which provides in full that:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d). Since, moreover, there is no doubt that an award against the government would have been appropriate in this case had it been the government rather than private intervenors against

---

1. The groups actually filed two motions for fees. The first, filed on May 17, 1982, included a request for fees for all the work except that on the "impermissible infringement" question; the District Court denied this motion on June 20, 1984. *NRDC v. Administrator, EPA*, 595 F.Supp. 65 (D.D.C.1984). The second, which sought fees for the remainder of the work, was filed on June 29, 1984, after the Supreme Court finally denied certiorari in the case, *Union Carbide Corp. v. NRDC*, 467 U.S. 1219, 104 S.Ct. 2668, 81 L.Ed.2d 373 (1984); relying on its first decision, the District Court denied this second motion on August 7, 1984. *NRDC v. Administrator, EPA*, Civil Action Nos. 75–1698, etc. (D.D.C. Aug. 7, 1984) (Order). NRDC alone has appealed both orders, and the appeals have been consolidated here.

whom the appellant had prevailed,[2] the specific question posed is whether it is "appropriate" under § 505(d) to award fees against a private intervenor.

The intent of the law is not evident from the face of the statute, which simply provides that awards may be made "to any party" with no mention of those "against" whom they may be made. Nor is there any legislative history directly addressing the issue. The parties before us offer varying analogies to other situations in which fees are, or are not, allowed, and varying assessments of which outcome best serves the purposes of the Act in the present case. We find it unnecessary to address these arguments in detail. The Clean Water Act is only one of a large group of statutes which contain fee-shifting provisions virtually identical to § 505(d), and the Supreme Court has made clear that these provisions "should be interpreted *pari passu,*" *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 691, 103 S.Ct. 3274, 3281, 77 L.Ed.2d 938 (1983) (citing *Northcross v. Memphis Board of Education,* 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973)); *see also id.* 463 U.S. at 692 n. 13, 103 S.Ct. at 3281 n. 13. This court has had occasion to address the same issue before us here in the context of one of those similar provisions, § 307(f) of the Clean Air Act (as amended by the Clean Air Act Amendments of 1977, Pub.L. No. 95–95, 91 Stat. 685, 777 (codified at 42 U.S.C. § 7607(f) (1982))), which provides as follows:

> In any judicial proceeding under this section, the court may award costs of litigation (including reasonable attorney and expert witness fees) whenever it determines that such award is appropriate.

*Sierra Club v. EPA,* 769 F.2d 796 (D.C.Cir. 1985). Our approach to the present case must be governed by that decision.[3] *See also Village of Kaktovik v. Watt,* 689 F.2d 222, 224–25 (D.C.Cir.1982) (applying § 307(f) standards to determine "appropriate" awards under Outer Continental Shelf Lands Act and Endangered Species Act); *Environmental Defense Fund v. EPA,* 672 F.2d 42, 47–48 (D.C.Cir.1982) (same for "appropriate" awards under the Toxic Substances Control Act).

Our decision in *Sierra Club* involved a suit brought by environmental plaintiffs challenging the EPA's proposed regulations to implement the 1977 amendments to the Clean Air Act. This court had issued a decision granting in part and denying in part the relief sought, and the government had declined to seek further review. Industry intervenors, however, went on to file several post-decisional motions in this court and a petition for certiorari in the Supreme Court, all of which were denied; Sierra Club then sought an award of fees against the intervenors for the work done opposing those motions and petition. Our

---

**2.** NRDC plainly met the requirement of "some degree of success on the merits," *see Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 3282, 77 L.Ed.2d 938 (1983), since it ultimately prevailed on all of the arguments it made. Nor is there any question whether NRDC "served the public interest" in bringing this suit, *Sierra Club v. EPA,* 769 F.2d 796, 800 (D.C.Cir.1985); the District Court found that the agreement reached "has proved to be of very great significance in the subsequent administration" of the Clean Water Act. Memorandum and Order at 2 (Aug. 16, 1978).

**3.** We reject appellant's contention that a more appropriate analogue than § 307 of the Clean Air Act is § 2 of the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. No. 94–559, 90 Stat. 2641 (codified as amended at 42 U.S.C. § 1988 (1982) (amending Rev.Stat. § 722)), which has been the basis of fee awards against private-par-ty intervenors, and has been interpreted to mean that a prevailing plaintiff " 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust,' " *Carson-Truckee Water Conservancy District v. Secretary of the Interior,* 748 F.2d 523, 526 (9th Cir.1984), *cert. denied,* 471 U.S. 1065, 105 S.Ct. 2139, 85 L.Ed.2d 497 (1985) (quoting *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). Section 1988 is not textually similar to § 505(d), since it does not provide for awards where "appropriate," but states that the court "may allow the prevailing party ... a reasonable attorney's fee." Since this is a "different ... statutory standard," we decline to apply the same interpretation here, particularly when an " 'identical' " statute has been interpreted differently. 748 F.2d at 526; *id.* (quoting *Ruckelshaus,* 463 U.S. at 682 n. 1, 103 S.Ct. at 3276 n. 1).

opinion denying that request relied upon the Supreme Court's cautionary dictum in *Ruckelshaus* that "special care" is called for in the award of fees against private parties, since they have "[d]iffering abilities to bear the cost" and "differing ... responsibility for fulfilling the goals of the Clean Air Act" than does the government. 769 F.2d at 810 (quoting *Ruckelshaus,* 463 U.S. at 692 n. 12, 103 S.Ct. at 3281 n. 12). We concluded that it was not "appropriate" to award fees against an unsuccessful private party who "took a position that reasonably attempted to advance the implementation of the Act." 769 F.2d at 811.[4]

■ As to the reasonableness of the intervenors' contentions in the present case, there is no real dispute. Intervenors' positions were plainly not "sufficiently unfounded to award fees against them," *Sierra Club,* 769 F.2d at 811. Nor does it seem to us doubtful that intervenors' arguments, though immediately directed to the undoing of a significant settlement agreement, ultimately sought a proper implementation of the Clean Water Act. Appellant, however, argues that intervenors sought and were permitted to enter this case (as we put it at the time) "not ... to upset the settlement agreement but to participate in its future administration," *NRDC v. Costle,* 561 F.2d at 908, and that they have "welched on [their] prior claim that ... intervention was not to 'upset' the Decree" by raising procedural and constitutional challenges to the District Court's authority that "ha[ve] nothing to do with a proper regulatory program under the Act." Reply Brief for Appellant at 11, 3; *see also* Brief for Appellant at 24. It is true that the reasons given by the industry parties for their motion to intervene differ significantly from the objectives they ultimately pursued. All of the changes, however, were related to intervening events. It was the passage of the Clean Water Act of 1977 that gave rise to the arguments that the agreement had been superseded and that the underlying

cases had been rendered moot. It was the District Court's allowance of certain amendments to the original agreement that gave rise to the claims of violation of the Administrative Procedure Act and of taking without due process of law. And it was the allowance of amendments plus this court's specific identification of the issue in its order of remand that gave rise to the argument that the agreement unlawfully infringed on the discretion of the Administrator. We think all of these arguments were justified by the changed circumstances.

In sum, we agree with the District Court that it is not appropriate under § 505(d) to award fees against these intervenors, who "took a position that reasonably attempted to advance the implementation of the Act." *Sierra Club,* 769 F.2d at 811. We therefore find it unnecessary to reach intervenors' other arguments.

*Affirmed.*

---

4. We do not speak, of course, nor did we in *Sierra Club,* to the situation in which a private party is the losing defendant in a citizen suit for pollution abatement. *See, e.g., Friends of the Earth v. PEPCO,* 546 F.Supp. 1357 (D.D.C.1982).