NATURAL RESOURCES DEFENSE COUNCIL, INC., a non-profit New York Corporation, et al., Appellants,

v.

Russell E. TRAIN, Administrator of Environmental Protection Agency, Appellee.

No. 74–1538.

United States Court of Appeals, District of Columbia Circuit.

Decided Sept. 15, 1975.

Ronald J. Wilson, Washington, D. C., with whom J. G. Speth and Edward L. Strohbehn, Jr., Washington, D. C., were on the brief, for appellants.

John J. Zimmerman, Atty., Dept. of Justice, with whom Wallace H. Johnson, Asst. Atty. Gen., Edmund B. Clark, Atty., Dept. of Justice, and Allen W. Eckert, Atty., Environmental Protection Agency, were on the brief, for appellee.

Before LEVENTHAL and ROBB, Circuit Judges, and NICHOLS,* Judge, United States Court of Claims.

ROBB, Circuit Judge:

Appellants, referred to here as plaintiffs, are four non-profit corporations interested in the implementation and enforcement of federal laws protecting the environment. They brought this suit in the District Court against the Administrator of the Environmental Protection Agency (EPA) "to review his implementation of Sections 101(a)(3) and 307(a)(1) of the Federal Water Pollution Control Act Amendments" of 1972 (FWPCA) 33 U.S.C. §§ 1251(a)(3), 1317(a)(1). The suit challenges the Administrator's action, pursuant to the statute, in publishing an initial list of toxic pollutants and in setting criteria for the inclusion of pollutants on the list. The District Court granted the Administrator's motion to dismiss the complaint on the merits.

The 1972 statute declares that "it is the national policy that the discharge of toxic pollutants in toxic amounts be prohibited". Section 101(a)(3), 33 U.S.C. § 1251(a)(3). In furtherance of this policy the Administrator is first directed to publish "and from time to time thereaft-er revise" a list of toxic pollutants or combination of pollutants, taking "into account the toxicity of the pollutant, its persistence, degradability, the usual or potential presence of the affected organisms in any waters, the importance of the affected organisms and the nature and extent of the effect of the toxic pollutant on such organisms." Section 307(a)(1), 33 U.S.C. § 1317(a)(1). The term "toxic pollutant" is defined in section 502(13), 33 U.S.C. § 1362(13).

Within 180 days after the publication of the list of toxic pollutants, the Administrator must propose effluent standards or prohibitions for the substances or combinations of substances on the list and must notice these proposed standards for public hearing. Within an additional six months after the publication of the proposed effluent standards or prohibitions, the Administrator must promulgate final effluent standards or prohibitions. Section 307(a)(2), 33 U.S.C. § 1317(a)(2). Final effluent standards or prohibitions established pursuant to section 307(a)(2) must take effect no later than a year from the date of their promulgation. Section 307(a)(6), 33 U.S.C. § 1317(a)(6).

The complaint in the District Court is in two counts. The first count alleges that the selection criteria used by the Administrator in choosing pollutants for inclusion on his initial list "impose preconditions and restrictions upon the inclusion of pollutants and combinations of pollutants on the list that are unlawful and inconsistent with the provisions and policies of the Act"; that the "promulgation of these unlawfully restrictive selection criteria is arbitrary, is beyond defendant's statutory authority, and is in violation of the Act." The count further alleges that in omitting substances from the list the Administrator was "guided by certain selection criteria and other considerations and constraints that are neither authorized by nor consistent with the Act." Finally, it is alleged that the Administrator's action in rejecting candidate pollutants for inclusion on the list

* Sitting by designation pursuant to 28 U.S.C. § 293(a).

"was arbitrary, . . . an abuse of discretion and . . . in violation of the Act." In the second count the complaint lists twenty-five substances alleged to be "toxic within the meaning of the Act" and claims that the Administrator "was without discretion to leave [these] substances . . . off the list of toxic pollutants". The omission of the twenty-five substances is alleged to have been "arbitrary and capricious, and in violation of the Act."

The complaint asks for a declaratory judgment and injunctive relief requiring the Administrator (1) to rescind and revoke the parts of the published selection criteria alleged to be unlawful for failure to reflect the relevant legislative factors; (2) to publish amended selection criteria reflecting the relevant legislative factors and those on which the Administrator relied; (3) to add to the list all substances satisfying the amended selection criteria, including the twenty-five substances alleged to have been wrongfully omitted.

Along with the complaint, the plaintiffs served on the Administrator a set of interrogatories and a request to produce documents. These requests were designed to elicit information as to what documents and materials were relied on by the Administrator in formulating his list of toxic pollutants—that is, what constituted the administrative record before the Agency. The plaintiffs also wished to determine what selection criteria were actually used by the Administrator in formulating his list, and whether and to what extent other considerations and constraints in addition to the published selection criteria were used in excluding substances from the list.

The Administrator did not answer the complaint or respond to the plaintiffs' requests for discovery. Instead he filed a number of documents which he characterized as the "administrative record" and moved to stay both discovery and answer pending resolution of a motion to dismiss. Thereafter, he filed a motion to dismiss, or in the alternative for summary judgment. The motion argued that

the published selection criteria were lawful, and that the Administrator's action in publishing the list of toxic pollutants, as "reasoned decision-making" within the Administrator's discretion, was unreviewable. From these premises the Administrator argued that the complaint failed to state a claim upon which relief could be granted.

Countering the Administrator's motion for summary judgment the plaintiffs filed an affidavit from their counsel asserting that the documents filed with the court by the Administrator did not constitute the entire administrative record. Specifically, the affidavit listed several documents which had been relied upon by the Administrator and had come to the attention of counsel but which were not included among those filed with the court. One of these documents was a report or summary described as the "Administrator's Briefing Book, entitled 'Toxic Pollutants, § 307(a), P.L. 92–500, Prepared by "HATS" Task Force, Office of Water Programs, Environmental Protection Agency (June 1973)' ". In response the Administrator filed two additional documents which he said constituted "parts of the record of the decision by the Administrator". He did not however file all the documents referred to in counsel's affidavit and in particular did not file the "Briefing Book" nor did he assert that the record as supplemented constituted the entire administrative record.

Holding there had been no showing that the Administrator had abused his discretion, the District Court granted the Administrator's motion to dismiss on the merits. The court pointed out that, pursuant to the statutory command that the list be revised from time to time, the Administrator was considering the inclusion of additional substances on his list. For this reason the court declined to "interject itself into an on-going and orderly administrative process". *Natural Resources Defense Council, Inc. v. Train,* 6 E.R.C. 1702, 1704 (D.D.C.1974). The court did not deal with the plaintiffs' allegations that the entire administrative

record was not before the District Court and that unstated and unpublished considerations were applied to exclude dangerous and toxic substances from the list.

### Jurisdiction of the District Court

The complaint invokes the jurisdiction of the District Court under section 505 of the Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. § 1365; section 10 of the Administrative Procedure Act, 5 U.S.C. §§ 701–706; the General Federal Question Statute, 28 U.S.C. § 1331; Mandamus and Venue Act, 28 U.S.C. § 1361; and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202. Although the Administrator questioned the jurisdiction of the District Court (see Memorandum in Support of Motion to Dismiss, pp. 29–35) the point apparently was not pressed, and as we have said the Administrator argued the case and the court decided it on the merits. On this appeal however the Administrator renews the jurisdictional argument, insisting that under section 509(b)(1) of the FWPCA, 33 U.S.C. § 1369(b)(1), exclusive jurisdiction to review the Administrator's actions is in this court. We must therefore determine whether the District Court had jurisdiction over the subject matter.

Two provisions of the 1972 statute relate to judicial review of the Administrator's actions in promulgating section 307(a) toxic pollutant lists and standards. Section 505, 33 U.S.C. § 1365 provides in pertinent part:

(a) Authorization; jurisdiction

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

\* \* \* \* \* \*

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this [Act] which is not discretionary with the Administrator.

The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, . . . to order the Administrator to perform such act or duty . . . .

Section 509(b)(1), 33 U.S.C. § 1369(b)(1) provides:

Review of the Administrator's action . . . (C) *in promulgating any effluent standard [or] prohibition . . .* under section [307] . . . may be had by any interested person in the Circuit Court of Appeals of the United States for the Federal judicial district in which such person resides or transacts such business upon application by such person. Any such application shall be made within ninety days from the date of such . . . promulgation, . . . or after such date only if such application is based solely on grounds which arose after such ninetieth day. [Emphasis supplied.]

The Administrator argues that since the use of selection criteria and the selection of substances to be listed are within his discretion section 505(a)(2) could not confer jurisdiction on the District Court. Furthermore, says the Administrator, since there is an "inextricable connection" between "the listing stage and the standard-setting stage of the Section 307 process" any challenge to his actions at the listing stage must be made in a circuit court of appeals under section 509. If this were not so, the argument runs, there would be "a real possibility of simultaneous suits in the district court and the court of appeals on the two stages of the same overall Section 307 process, with the attendant possible frustration of the actions of both courts."

█ We agree that when the Administrator has listed a substance and thereafter promulgated standards or prohibitions for that substance the listing and the promulgation of standards are interwoven; any challenge to the Administrator's action must then be in a court of appeals under section 509 which provides for review of the Administrator's action

"in promulgating any effluent standard [or] prohibition."

■ The problem comes when, as in this case, the Administrator has published a list of toxic substances, and it is alleged that the omission of certain substances from that list is arbitrary, capricious and unlawful. Unless a substance is listed no standard or prohibition reviewable under section 509 will ever be promulgated. At the same time, if the decision not to list a substance is within the Administrator's discretion then it is not subject to review under section 505. Absent a determination that listing is non-discretionary, an action like the present one, alleging that the failure of the Administrator to list certain substances is arbitrary, capricious and unlawful, would be consigned to jurisdictional limbo under FWPCA. Such a determination is not necessary here, however, for we have held that section 505 is not an exclusive basis for jurisdiction in the District Court. *Natural Resources Defense Council, Inc. v. Train,* 166 U.S. App.D.C. 312, 510 F.2d 692, 698–703 (1974). The District Court has jurisdiction under the Administrative Procedure Act to review administrative action not expressly made unreviewable to determine whether there has been an abuse of discretion. 5 U.S.C. § 706(2)(A). We hold, therefore, that the District Court had jurisdiction in this case under 5 U.S.C. § 706(2)(A).

### The Insufficiency of the Record Before the District Court

The Administrative Procedure Act and the cases require that the complete administrative record be placed before a reviewing court. Thus the Act provides that in reviewing agency action claimed to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" the court "shall review the whole record or those parts of it cited by a party . . .." 5 U.S.C. § 706. In *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), the plaintiffs challenged the decision of the Secretary of Transportation to authorize a highway through a public park. In the District Court the defendants introduced affidavits supporting the Secretary's decision. The plaintiffs filed counter affidavits and sought to take the deposition of a former federal highway administrator. The District Court refused to order the deposition and on the basis of the affidavits held that the Secretary had not exceeded his authority. The Circuit Court of Appeals affirmed, but the Supreme Court reversed on the ground that the affidavits "clearly do not constitute the 'whole record' compiled by the agency: the basis for review required by § 706 of the Administrative Procedure Act." The Court remanded the case for review "to be based on the full administrative record that was before the Secretary at the time he made his decision." 401 U.S. at 419–420, 91 S.Ct. at 825. The Court indicated that some discovery might be required if "additional explanation" of the Secretary's decision was necessary. *Id.* at 420–421, 91 S.Ct. 814. *See also Appalachian Power Co. v. EPA,* 477 F.2d 495, 507 (4th Cir. 1973).

■ As we have said the plaintiffs by way of an affidavit from their counsel made a substantial showing in the District Court that the Administrator had not filed the entire administrative record with the court. The affidavit specified several documents that had been omitted, including the Administrator's Briefing Book. Notwithstanding this showing the Administrator did not produce the Briefing Book nor did he ever claim that he had filed the entire administrative record; and the court proceeded with its review on the basis of a partial and truncated record. We think this was error.

Our conclusion is fortified by examination of the "Briefing Book" which the Administrator has filed with this court as a "supplemental record". This book, consisting of eighty pages, is a report or summary prepared by a task force and submitted for the Administrator's consideration "in determining EPA policy relative to the Toxic Pollutant List of Sec-

tion 307(a) of the Federal Water Pollution Control Act Amendments of 1972." (Report, p. 1.) The report contains a detailed discussion of the issues before the Administrator, factual data, analysis of proposed listings and screening criteria, and recommendations. Plainly, the document throws light on the factors and considerations relied upon by the Administrator in establishing criteria and compiling his initial list of pollutants. Since the Administrator now concedes that this document is properly part of the administrative record it should have been made available to the District Court and to the plaintiffs in that court.

In his brief in this court the Administrator suggests that "this Court presently has the administrative record, as supplemented, before it," and he invites us to consider the validity of his actions upon the basis of this record. We decline the invitation. The entire administrative record should have been presented in the first instance to the District Court where the Administrator joined issue on the merits. Moreover the plaintiffs are entitled to an opportunity to determine, by limited discovery, whether any other documents which are properly part of the administrative record have been withheld.

We think it in furtherance of sound judicial administration, 28 U.S.C. § 2106, to remand, rather than determine the validity of the Administrator's past course, having in mind that the remand will permit plaintiff to file a supplemental complaint. The Administrator will file the entire administrative record pertinent to the omissions identified in the complaint or supplemental complaint. With doubts as to the subject-matter jurisdiction set at rest, the District Court can proceed to consider issues of validity in their current context.

The judgment is reversed and remanded for further proceedings on the entire administrative record.

So ordered.

NICHOLS, Judge (dissenting):

Respectfully and reluctantly I dissent. It appears to me that the majority misconstrues the decision below, which I would affirm.

Defendant Russell E. Train, appellee here, moved to dismiss the complaint, or, in the alternative, for summary judgment. Since the court elected to dismiss, defendant's reference to what he called "the administrative record filed herein" in support of summary judgment became irrelevant, and the distinguished judge quite properly did not consider whether it was complete. To dismiss the complaint, under Rule 12(b), F.R.C.P., he had to decide there was a lack of jurisdiction over the defendant, or over the subject matter of the suit, or that the complaint itself failed to state a claim upon which relief could be granted. Manifestly, he elected the third ground and passed over the first two. Therefore, the facial adequacy of the complaint was the sole issue he ruled on, and in that light his opinion must be read.

The complaint alleged that the Act cited in the opinion, 33 U.S.C. § 1251 and ff., required the defendant to publish a full list of toxic pollutants by January 16, 1973, that he failed to do so, and only after court order published a list of nine pollutants only, stating therewith in a published notice that pollutants were chosen for the "initial list" on the basis of four criteria, which may be capsuled (1) that the pollutant was a serious environmental threat, (2) that it could be discharged from "point sources", (3) that data was available to establish effluent standards, and (4) abatement actions under other provisions of the Act would not be commensurate with the nature and seriousness of the problem. The complaint says these criteria are unauthorized and unlawful.

Plaintiffs equated exclusion of a substance from the list of nine with a decision not to regulate it, effective in perpetuity. Yet it was not denied that the Act provided for amending and supplementing the list after initial publication,

nor that defendant had numerous other toxic substances under serious study. The omission of a toxic substance from the initial list was in no sense intended as a final decision to take no action with respect to that substance. The position of the complainants manifestly was that defendant had no authority to pick and choose among toxic substances and list some of them according to a self-devised system of priorities. He had to publish all of them, no matter how much or little he knew about them nor how serious a peril they appeared to present, even though the statute required the publication to lead in a specified brief time to regulatory measures. Apparently, the defendant had to regulate, and whether the regulation was well or ill considered was no concern of the statute.

The opinion below dismissing the complaint, rejects this interpretation of the law and says that the law gives the Administrator discretion to select a short list of toxic substances for speedy action while continuing study of the others. In the circumstances, with rejection of no substance yet final, consideration by the court of what substances should be listed, other than the nine would be "to interject itself into an on-going and orderly administrative process * * *" In this view of the case, the materials relating to individual toxic pollutants other than the nine, that defendant introduced voluminously into the record in support of its motion for summary judgment, were irrelevant to the motion to dismiss. Allowance of the latter motion pre-empted the summary judgment question. The court could not properly have considered these materials and did not do so. In effect, the court holds the suit to have been prematurely brought, and manifestly the decision, if affirmed, would not have been *res judicata* against a suit brought to obtain review of any final decisions to exclude, at a proper time, nor would appellants be left remediless in cases of unreasonable delay in deciding.

Unlike the majority, I believe, I do not read the statement in the decision below, that "there has been no showing that he [the defendant] has abused that discretion [*i. e.,* to establish priorities] or that he has exercised it except in a lawful and logical manner" as denoting that the court has reviewed the segments of the administrative record proffered by defendant, and found them free from error. I think it relates to the published decision of the defendant to resort to priorities in listing and the facial reasonableness of the priorities criteria that he published. Should the court below have examined the case at all as to any specific toxic substance, then unlisted, it would have contradicted its own statement that to do so would be to "engage in premature speculation as to the Agency's possible failure to carry out that continuing duty at some yet unforeseeable future time."

In short, the court below held that the complaint on its face failed to state a cause of action, that court was right in so holding, and it should be affirmed. Plaintiffs should have the judicial review we hold them entitled to in a new action brought at the proper time.

As a practical matter perhaps it does not make so much difference. Our affirmance would no doubt have been followed by a new suit, where as things are we shall have a new complaint in the same suit. Much water, polluted or not, has passed over the dam since the lower court spoke, no doubt, and there will have to be more litigation to resolve a wholly altered situation. As indicated, the decision below, if affirmed, would not have been *res judicata* against a new suit brought at the proper time. New suit or old one rejuvenated, make little practical difference, perhaps. It is just that I cannot in good conscience join in reversing a decision in which I see no error.

A party who moves to dismiss or, in the alternative, for summary judgment, necessarily submits documents in support of the latter alternative. If the court elects the former, in effect it elects to ignore the documents. The confusion arising in the instant case would suggest

the wisdom of the court's expressly stating the documents were not considered, when this was the fact. And of course a decision should say so in flat words when it holds that a complaint is insufficient on its face. Manifestly these guides to interpretation of the decision below are needed by the appellate court and the trial court should supply them. Their omission here was particularly damaging because defendant's brief reads as if the motion for summary judgment was the one acted on. However, the court below is entitled to have its intent determined in light of a careful reading of its actual opinion, not the exegesis of it by any party.