**RIVERKEEPER, INC.,
et al., Plaintiffs,**

v.

**UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,
Defendants.**

**No. 06 Civ. 12987(PKC).**

United States District Court,
S.D. New York.

Sept. 24, 2007.

Order Amending Memorandum
Sept. 28, 2007.

---

Edward Lloyd, Morningside Heights Legal Services, New York City, Reed Wayne Super, Columbia University School of Law, New York City, Philip Kent Correll, Law Office of P. Kent Correll, New York City, Charles Craig Caldari, National Environmental Law Center (Seattle), Seattle, WA, Joseph J. Mann, National Environmental Law Center, San Francisco, CA, for plaintiffs.

Wendy Wei-Wenne Huang Waszmer, U.S. Attorney's Office, SDNY (Chambers Street), New York City, for defendants.

Russell Scott Frye, Fryelaw, PLLC, Washington, DC, for intervenor.

## MEMORANDUM AND ORDER

P. KEVIN CASTEL, District Judge.

Section 316(b) of the Clean Water Act (the "Act"), 33 U.S.C. § 1326(b), seeks to protect fish, shellfish and other aquatic organisms from unnecessary harm from cooling water intake structures. Phase I and Phase II Rules, promulgated pursuant to a consent decree in a prior litigation to enforce section 316(b), have been considered in prior opinions of the United States Court of Appeals for the Second Circuit, familiarity with which is assumed. *See Riverkeeper, Inc. v. EPA*, 358 F.3d 174 (2d Cir.2004) (*"Riverkeeper I"*); *Riverkeeper, Inc. v. EPA*, 475 F.3d 83 (2d Cir.2007) (*"Riverkeeper II"*).

On June 16, 2006, the United States Environmental Protection Agency ("EPA") promulgated "Final Regulations to Establish Requirements for Cooling Water Intake Structures at Phase III Facilities" ("Phase III Rule"), 71 Fed.Reg. 35,006.[1]

---

1. According to the EPA, Phase III includes: "Utility and non-utility power producers not covered by the Phase II regulations, pulp and paper manufacturing, petroleum and coal products manufacturing, chemical and allied products manufacturing, and primary metals manufacturing...." 71 Fed.Reg. at 35,011.

The EPA adopted final regulations establishing categorical limitations for intake structures at new offshore oil and gas extraction facilities. *Id.* However, the final action did not include the promulgation of a regulation governing existing Phase III facilities. *Id.*

The plaintiffs filed suit against the EPA and its Administrator (collectively, the "EPA defendants") pursuant to section 505(a) of the Act. They allege that the EPA Administrator was required by section 316(b) to promulgate regulations governing cooling water intake structures at existing facilities but failed to do so. This, they further allege, constituted the failure to perform a non-discretionary duty under the Act. They seek injunctive and declaratory relief requiring the promulgation of such regulations.

The EPA defendants now move to dismiss asserting that subject matter jurisdiction to review final agency action with respect to any Phase III Rule lies only in the court of appeals and not in the district court.[2] The motion is denied.

### I. *Subject Matter Jurisdiction*

The EPA defendants correctly note that section 509(b)(1)(E) of the Act vests exclusive jurisdiction in the courts of appeals to review "the Administrator's action ... in approving or promulgating any effluent limitation or other limitation...." 33 U.S.C. § 1369(b)(1)(E). They argue that

the final action of the EPA will mean that existing facilities will continue to be considered on a case-by-case, best professional judgment basis. *See* 71 Fed.Reg. 35,006. The EPA defendants characterize the plaintiffs' Amended Complaint as challenging the EPA's selected method of regulating cooling water intake structures in existing facilities. On a plain comparison of the agency's action against the language of section 509(b)(1)(E), the decision not to promulgate a regulation or other form of "limitation" does not easily equate with "action ... approving or promulgating any effluent limitation or other limitation."

Not all actions of the EPA under the Act are reviewable under section 509(b)(1)(E). "If Congress had so intended, it could have simply provided that all EPA action under the statute would be subject to review in the courts of appeals, rather than specifying particular actions and leaving out others." *Bethlehem Steel Corp. v. EPA*, 538 F.2d 513, 517 (2d Cir. 1976). The Amended Complaint asserts a claim that is not within the scope of section 509(b)(1) (E) because it challenges not a "limitation" but the absence of a "limitation."

The EPA defendants point out that the plaintiffs have filed a petition under 509(b)(1)(E) in the Court of Appeals for the Second Circuit (subsequently transferred to the Fifth Circuit) to review the agency action. *Riverkeeper v. EPA*, 06–

---

**2.** While the EPA defendants' Notice of Motion cites Rule 12(b) (6), Fed.R.Civ.P., the parties have not addressed the question of whether the Amended Complaint fails to state a claim, except as incidental to the jurisdictional argument. In a January 12, 2007 pre-motion letter submitted to the Court, the EPA asserted an intention to move under Rule 12(b)(1), Fed.R.Civ.P. The EPA's memorandum in support of the motion addresses subject matter jurisdiction, but advances no separate argument that the Amended Complaint fails to state a claim. (D. Mem. at 10.) Plaintiffs

take the position that no Rule 12(b)(6) motion is before this Court and have not briefed the merits of such a motion. (P. Mem. at 3 n. 5.) Finally, the parties agreed in the Case Management Plan which was adopted as an Order of this Court that "if the court has jurisdiction to review plaintiffs' claims, the claims are properly resolved upon cross motions for summary judgment." (Order dated Jan. 19, 2007; Docket No. 13.) I do not now reach whether the Amended Complaint states a claim upon which relief may be granted.

3059–ag (2d Cir.). True, "there is a strong presumption against the availability of simultaneous review in both the district court and the court of appeals" under the Act. *Sun Enterprises, Ltd. v. Train*, 532 F.2d 280, 287 (2d Cir.1976) (citing *Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654 (D.C.Cir.1975)). But the presumption does not relieve this Court of its obligation to determine its own jurisdiction. There is no indication that proceedings in the Court of Appeals have advanced beyond an application to transfer venue from the Fifth Circuit to the Second Circuit, and plaintiffs have expressed an intention to seek a stay of their petition.

Having concluded that the Amended Complaint does not present an issue under section 509(b)(1)(E), there remain the questions of whether this Court has jurisdiction of the asserted claims under section 505(a) of the Act and sections 706(2)(A) and (C) of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), (C).

### A. *Citizen Suits Under Section 505(a) of the Clean Water Act*

█ Section 505(a) of the Act permits "any citizen" to commence an action on his own behalf in the district courts "against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2). Here, the Amended Complaint alleges that the EPA administrator had a non-discretionary duty under the Act to promulgate regulations governing cooling water intake structures at existing industrial facilities but failed to do so. (Am.Compl., ¶ 90.) If not immaterial, insubstantial or frivolous, the allegations are sufficient to confer jurisdiction on this Court. *Bell v. Hood*, 327 U.S. 678, 681–83, 66 S.Ct. 773, 90 L.Ed. 939 (1946).

Section 316(b) of the Act provides that "[a]ny standard established pursuant to section [301 (effluent limitations)] or section [306 (national standards of performance)] and applicable to a point source shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." 33 U.S.C. § 1326(b); *see also id.* §§ 1311, 1316. The quoted statutory language does not on its face mandate the issuance of any regulation or "standard" but speaks to the required elements of "any standard" that is established under sections 301 and 306. The plaintiffs assert that the missing element is supplied by section 301 which required certain "effluent limitations" be established by specified dates. The plaintiffs assert that section 301 "effluent limitations" were established for existing facilities thereby triggering an obligation to establish certain limitations under section 316(b). *See* 40 C.F.R. §§ 414, 419, 430 & 438; *see also Riverkeeper I*, 358 F.3d at 185 (discussing the obligation to promulgate effluent limitations applicable to existing facilities under section 301). It suffices to note for jurisdictional purposes that plaintiffs' allegations are not "immaterial", "insubstantial" or "frivolous". *Bell v. Hood*, 327 U.S. at 682–83, 66 S.Ct. 773.

I do not view *Virginia Electric & Power Co. v. Costle*, 566 F.2d 446 (4th Cir.1977), to be to the contrary. There, a regulation was promulgated under section 316(b) which required the submission of certain data to facilitate a case-by-case review. The Court concluded that the regulation, though it did not contain specific numerical standards, amounted to a "limitation." *Id.* at 450. Here, it is the absence of a limitation that is challenged, not the adequacy of a limitation that has been approved or promulgated.

This Court has subject matter jurisdiction over the section 505(a) claim.

### B. *The Claim Under Administrative Procedure Act*

■ Plaintiffs have also asserted claims for relief under sections 706(2)(A) and (C) of the APA, 5 U.S.C. § 706(2)(A), (C). The second claim for relief, asserted under section 706(2)(C), asserts that in not promulgating regulations, the EPA defendants acted inconsistent with and in excess of their statutory authority and limitations under the Act. (Am.Compl., ¶¶ 92–94.) The third claim asserts that the EPA defendants' failure to promulgate regulations was arbitrary, capricious, an abuse of discretion or contrary to law. (*Id.*, ¶¶ 92–97.)

Plaintiffs concede that these claims must drop out of the case if they were to prevail on the section 505(a) claim. Were this Court to conclude that the plaintiffs' section 505(a) claim did state a claim for relief (which I do not now reach), then the plaintiffs could not meet the requirement that they have "no other adequate remedy in a court." 5 U.S.C. § 704.

This is not a circumstance where jurisdiction lies in the district court either under section 505(a) of the Act or not at all. In *Natural Resources Defense Council, Inc. v. Train,* 519 F.2d 287 (D.C.Cir.1975), the plaintiff challenged the EPA Administrator's omission of certain substances from an initial list of toxic pollutants under the Act. The D.C. Circuit rejected the EPA's claim that the courts of appeals had exclusive jurisdiction under section 509(b), but it also concluded that the district court did not have jurisdiction under section 505(a) because the Administrator's omission was a discretionary act. It held that the district court properly exercised jurisdiction under section 706(2)(A) of the APA to determine whether there had been an abuse of discretion in the agency's omis-

sions from the list of toxic pollutants. *Id.* at 291.

The EPA defendants acknowledge that there has been "final agency action" even if it has resulted in no regulations. 5 U.S.C. § 704. It suffices for present purposes that this Court has jurisdiction to decide the claims under the APA.

### II. *Relationship of this Case to Cronin*

The EPA and at least one of the plaintiffs in this action entered into a consent order in an action brought under section 505(a) alleging that the EPA had failed to promulgate regulations as required by section 316(b). *Cronin v. Browner,* 898 F.Supp. 1052 (S.D.N.Y.1995). The opinion of the late Judge Schwartz, after concluding that the Court had subject matter jurisdiction, describes the consent order as "set[ting] forth a timetable by which EPA will either issue regulations regarding cooling water intake structures or determine that no such regulations are necessary." *Id.* at 1055. Plaintiffs allege that an amended consent decree in *Cronin* required the EPA to take final action by June 1, 2006 on Phase III "regulations" applicable to, at minimum, certain specific categories of operations. (Am.Compl., ¶ 58.) If the *Cronin* order did require regulations, then plaintiffs' remedy may be to enforce the order. If the order did not require regulations as to existing facilities, then it is fair to inquire whether any party to *Cronin* who is also a party to the action before me surrendered its right to seek such relief. A related question is whether the lawsuit before me, which relates solely to the Phase III Rule, is subsumed within *Cronin* which relates to all three phases and remains an open case. *See New Phone Co. v. City of New York,* 498 F.3d 127, 2007 WL 2282974, at *1 (2d Cir. Aug.10, 2007) ("As part of its general power to administer its docket, a district court

may stay or dismiss a suit that is duplicative of another federal court suit."). These issues have not been addressed but ought to be.

*Conclusion*

The motion to dismiss for lack for of subject matter jurisdiction is denied.

SO ORDERED.

### AMENDMENT TO MEMORANDUM AND ORDER

There are strong jurisprudential reasons counseling against an unnecessary certification of a controlling question of law to a court of appeals, pursuant to 28 U.S.C. § 1292(b). There is utility in developing a complete factual record. Piecemeal appeals are highly disfavored. Nevertheless, it is a procedural device available for use in a proper instance, which I conclude that this is. Section 1292(b) contains no bar on *sua sponte* certification. *See, e.g., Aurora Maritime Co. v. Abdullah Mohamed Fahem*, 85 F.3d 44, 46 (2d Cir.1996); *Wisdom v. Intrepid Air Space Museum*, 993 F.2d 5, 7 (2d Cir.1993).

In a Memorandum and Order dated September 21, 2007 ("September 21 Order"), I concluded that a challenge to certain final agency action of the United States Environmental Protection Agency ("EPA") was not within the exclusive jurisdiction of the courts of appeals. The courts of appeals have exclusive jurisdiction to review "the Administrator's action . . . in approving or promulgating any effluent limitation or other limitation . . . ." 33 U.S.C. § 1369(b)(1)(E). But I concluded that the district court had jurisdiction over the claim because the amended complaint alleged that the EPA failed to adopt "standards" as plaintiffs contend were required by section 316(b) of the Clean Water Act (the "Act"), 33 U.S.C. § 1326(b). Section 505(a) of the Act permits "any citizen" to commence an action on his own behalf in the district courts "against the Administrator [of the EPA] where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator." 33 U.S.C. § 1365(a)(2).

The EPA argued that the final agency action continued existing standards for cooling water intake structures for preexisting facilities and that these standards required a case-by-case, best professional judgment review. The final agency action, the EPA asserted, was the approval or promulgation of a "limitation" and hence in the exclusive jurisdiction of the courts of appeals. It was not, the EPA has argued, a failure to perform a non-discretionary act or duty within the jurisdiction of the district court.

The issue presented is a pure "question of law." 28 U.S.C. § 1292(b). There are no facts in dispute, only the legal conclusions to be drawn from the facts. The "question of law" is a "controlling" one. *Id.* If the EPA is correct, then this Court lacks subject matter jurisdiction.

There is a "substantial ground for difference of opinion." *Id.* Neither side has been able to uncover precedent close to point. One could view the EPA's final action continuing a standard as "approval" of a "limitation," albeit a pre-existing one. One could also view the matter differently, as I have. Section 316(b) of the Act provides that "[a]ny standard established pursuant to section [301 (effluent limitations)] or section [306 (national standards of performance)] and applicable to a point source shall require that the location, design, construction, and capacity of cooling water intake structures reflect the best technology available for minimizing adverse environmental impact." 33 U.S.C. § 1326(b). The plaintiffs allege that the EPA did establish standards under section 301 but did not also take the action "require[d]" by section 316(b). I have agreed

with plaintiffs that the amended complaint sets forth non-insubstantial, non-frivolous allegations of a failure to perform a non-discretionary duty, thereby conferring jurisdiction on this Court under Section 505(a).

The relevant point for certification purposes is that, in the absence of controlling case law and in view of a proffer of a plausible statutory interpretation, there is a "substantial ground" for disagreement with my ruling. 28 U.S.C. § 1292(b).

I also conclude that "an immediate appeal" from the September 21 Order will "materially advance the ultimate termination of the litigation." *Id.* The jurisdictional issue is a threshold issue which would resolve the case in the district court. If a court of appeals has jurisdiction, then I do not.

There is a strong additional reason to certify the question. Presently pending in the Court of Appeals is a petition by these very same plaintiffs seeking review of the very same agency action on the basis that the EPA's action was a "limitation" and within the exclusive jurisdiction of the courts of appeals. *Riverkeeper v. EPA,* 06–3059–ag (2d Cir.). The petition, originally filed in the Court of Appeals for the Second Circuit, has been transferred to the Court of Appeals for the Fifth Circuit, but the plaintiffs report that there is a pending motion to transfer it back to the Second Circuit. Plaintiffs assert that they filed this petition on a protective basis. Although it is not a critical part of my reasoning in granting certification, I note that certification may provide a vehicle for the Court of Appeals to address the issue at one time.

*CONCLUSION*

For the foregoing reasons, the Memorandum and Order dated September 21, 2007 is amended to include certification, pursuant to 28 U.S.C. § 1292(b) and Rule 5(a)(3), Fed. R. Appellate P., of the question of whether this Court has subject matter jurisdiction over the claims asserted in the Amended Complaint.

SO ORDERED.